UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**KATHLEEN K.,**

       **Plaintiff,**                 Case No. 1:20-cv-3880
                                            Magistrate Judge Norah McCann King

    v.

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

       **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Kathleen K. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Acting Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.   PROCEDURAL HISTORY**

On November 12, 2015, Plaintiff filed an application for benefits, alleging that she has been disabled since October 28, 2015. R. 456–63. The application was denied initially and upon reconsideration. R. 391–95, 397–402. Plaintiff sought a *de novo* hearing before an

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

administrative law judge. R. 403–04. Administrative Law Judge ("ALJ") Lisa Hibner held a hearing on July 19, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 301–58. In a decision dated January 7, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 28, 2015, the alleged disability onset date, through the date of that decision. R. 285–94. That decision became the final decision of the Acting Commissioner of Social Security when the Appeals Council declined review on March 5, 2020. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 25, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[2] On August 26, 2020, the case was reassigned to the undersigned. ECF No. 10. The matter is now ripe for disposition.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*,

---

[2] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

3

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

4

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 54 years old on her alleged disability onset date. R. 293. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020. R. 287. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between October 28, 2015, Plaintiff's alleged disability onset date, and the date of the decision. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: schizoaffective disorder; posttraumatic stress disorder; anxiety and depressive disorders. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 287–90.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to various non-exertional limitations. R. 290–93. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a cashier. R. 293.

At step five, the ALJ found that a significant number of jobs–*i.e.*, approximately 47,286 jobs as a routing clerk; approximately 231,715 jobs as a cleaner / housekeeper; approximately 10,902 jobs as a sub assembler–existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 294. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 28, 2015, her alleged disability onset date, through the date of the decision. *Id.*

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the

decision of the Acting Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 13; *Plaintiff's Reply Brief*, ECF No. 19. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 18.

## IV.  SUMMARY OF RELEVANT MEDICAL EVIDENCE

On January 26, 2016, Young Bin Lee, M.D., Plaintiff's treating psychiatrist since 2014, completed a three-page, check-the-box, and fill-in-the-blank form entitled "Mental Assessment Form." R. 674–76 (part of Exhibit 4F) ("Dr. Lee's Mental Assessment Form"); *see also* R. 635 (reflecting Dr. Lee's treatment note dated August 20, 2014). Dr. Lee opined as to Plaintiff's abilities to perform occupational adjustments, performance adjustments, and personal-social adjustments. R. 674–76.[3] Specifically, as to Plaintiff's abilities to perform occupational adjustments, Dr. Lee opined that Plaintiff had "Fair" abilities to follow work rules, relate to co-workers, function independently, and maintain attention and concentration, but "Poor/None" ability to deal with the public, use judgment with the public, interact with supervisors, or deal with work stresses. R. 674–75. Dr. Lee explained: "Pt hears baby crying at work & cannot concentrate. She thinks people are talking about her[.]" R. 675. As to her abilities to make performance adjustments, Dr. Lee opined that Plaintiff had "Poor/Fair" abilities to understand,

---

[3] Dr. Lee used a scale with the following ratings: "Unlimited or Very Good" reflected that an "[a]bility to function in this area is more than satisfactory"; "Good" reflected that the "[a]bility to function in this area is limited but satisfactory"; "Fair" reflected that the "[a]bility to function in this area is seriously limited, but not precluded"; and "Poor or None" reflected that there is "[n]o useful ability to function in this area." R. 674.

remember, and carry out complex job instructions; detailed, but not complex job instructions; and simple job instructions. *Id.* As to Plaintiff's abilities to make personal-social adjustments, Dr. Lee opined that Plaintiff had a "Good" ability to maintain her personal appearance, but "Fair" abilities to behave in an emotionally stable manner, follow simple job instructions, and demonstrate reliability. R. 676.

On the same day, Dr. Lee also completed a two-page, check-the-box, and fill-in-the-blank form entitled "Supplemental Questionnaire as to Residual Functional Capacity." R. 677–78 (part of Exhibit 4F) ("Dr. Lee's Supplemental Questionnaire").[4] Dr. Lee opined that Plaintiff had moderately severe limitations in her abilities to relate to other people; ability to perform daily activities; constriction of interests; comprehend and follow instructions; perform work requiring frequent contact with others; perform work where contract with others will be minimal; perform complex tasks; and perform varied tasks. *Id.* Dr. Lee also opined that Plaintiff had moderate limitations in her degree of limitation in personal habits; ability to perform simple tasks; and ability to perform complex tasks. *Id.* Dr. Lee responded "Yes" when asked whether Plaintiff's impairment had lasted or could be expected to last for twelve months or longer at the level of severity indicated, noting that Plaintiff "needs chronic psychotic follow ups." R. 678.

On February 1, 2016, Dr. Lee observed in his treatment notes that "[a] note given to be off duty until May 1. She [Plaintiff] is waiting for SSD." R. 861 (part of Exhibit 15F) ("Dr. Lee's February 2016 note").

---

[4] Dr. Lee used a scale with the following ratings: "None" means no impairment in this area; "Mild" means a suspected impairment of slight importance which does not affect ability to function; "Moderate" means an impairment which affects but does not preclude ability to function; "Moderately Severe" means an impairment which seriously affects ability to function; and "Severe" means extreme impairment of ability to function. R. 678.

In October 2018, Fatin Nahi, M.D., a Board-certified psychiatrist, responded to interrogatories propounded to her as a medical expert. R. 976-85. Based on her review of Plaintiff's medical records, Dr. Nahi opined that Plaintiff's depression and history of polysubstance abuse rendered her moderately limited in her ability to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions. R. 979.  According to Dr. Nahi, Plaintiff's "chronic mental illness with depression and subs [sic] use, she could have some difficulties with concentration and adapting herself."  R. 921. Otherwise, however, Dr. Nahi indicated that Plaintiff had either no or only mild limitations in her ability to engage in work-related activities. R. 979-80.

**V.      DISCUSSION**

Plaintiff challenges the ALJ's consideration of various medical opinions including, *inter alia*, the opinions of Plaintiff's treating psychiatrist, Young Bin Lee, M.D. *Plaintiff's Brief*, ECF No. 13, pp. 9–13; *Plaintiff's Reply Brief*, ECF No. 19, pp. 1–4. Plaintiff's arguments are well taken.

 An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and

10

evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

"'A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship

11

and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

At step four of the sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to certain additional non-exertional limitations as follows:

> [T]he claimant can perform simple, routine tasks, working in a low-stress job, defined as having only occasional decision making and changes in the work setting. She can make occasional judgment on the job. She can have frequent interaction with supervisors, co-workers and the public. She would be off-task 10% of the workday in addition to regularly scheduled breaks.

R. 290. In reaching this determination, the ALJ, *inter alia*, assigned "partial weight" to the opinions of Dr. Nahi. R. 292. The ALJ gave "some weight" to Dr. Lee's "moderately severe"

opinions at Exhibit 4F, and found that Dr. Lee's February 2016 note was rendered on an issue reserved to the Commissioner and unsupported by the evidence:

> As for the opinion evidence, a medical expert, Fatin Nahi, indicated that claimant has mild to moderate limitations (Exhibits 22F; 23F). The representative brief argued that this opinion was unsupported (Exhibit 21E). While the undersigned agrees that some of medical expert's responses are unclear, and therefore given partial weight, overall, the medical evidence of record does not support more than mostly moderate limitations, especially the notes from the Center for Family Guidance (Exhibit 15F). Dr. Lee's note stating the claimant is "off duty until May 1" (Exhibit 15F) is a medical-vocational determination reserved to the Commissioner (404.1527(d) and 416.927(d)) and not to a specific medical source. The undersigned finds this statement nonpersuasive, as it is unsupported by the objective medical findings. The opinion at Exhibit 2F is given little weight as it is unsigned and missing pages. Dr. Mintzer's opinion[5] of moderate to severe limitations (Exhibit 3F) is given some weight as it supports the claimant's severe mental impairments. However, he does not offer any quantified limitations. Dr. Lee's opinion of moderately severe limitations (Exhibit 4F) is given some weight insofar as it supports a finding the claimant can perform unskilled work.

R. 292.

Plaintiff first challenges the ALJ's consideration of Dr. Lee's opinions contained in Exhibit 4F, arguing that the ALJ failed to provide any evidentiary basis or good reasons for discounting these opinions. *Plaintiff's Brief*, ECF No. 13, pp. 9–13. This Court agrees. As set forth above, the ALJ simply states that she assigns "some weight" to Dr. Lee's opinions contained in Exhibit 4F, namely, in the Mental Assessment Form and Supplemental Questionnaire, "insofar as it supports a finding the claimant can perform unskilled work[,]" without explaining or citing to any portion of the record why these "moderately severe" opinions–or any of Dr. Lee's other opinions in the Mental Assessment Form– were not entitled to controlling weight. R. 292. Although an ALJ is free to determine whether and to what extent a treating physician's opinions should be credited, the ALJ cannot reject evidence from a treating

---

[5] Plaintiff does not challenge the ALJ's consideration of Dr. Mintzer's opinion.

13

physician "for no reason[.]" *Morales*, 225 F.3d at 317 (citation and internal quotation marks omitted); *see also Fargnoli*, 247 F.3d at 43 (stating that when an ALJ "weigh[s] the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence."). The limited explanation provided by the ALJ therefore does not allow this Court to understand and assess the basis for the ALJ's decision to accord only "some weight" to Dr. Lee's opinions contained in Exhibit 4F, *i.e.*, in the Mental Assessment Form and Supplemental Questionnaire. *See Jones,* 364 F.3d at 505 (stating that an ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review"); *Zigarelli v. Comm'r, Soc. Sec. Admin.*, No. CV 18-12690, 2019 WL 3459080, at *4 (D.N.J. July 30, 2019) ("The ALJ, however, does not explain in what way he found the limitation to be vague, nor does he cite to specific contradictory evidence in the record. . . . [and] fails to explain how the opinion and treatment note are inconsistent with each other.[] Thus, the Court cannot determine whether the ALJ properly discounted Dr. Ranawat's opinion in this regard."); *Hines v. Colvin*, No. CV 18-13828, 2018 WL 6313499, at *4 (D.N.J. Dec. 3, 2018) ("These vague citations to the record are insufficient to 'provide a clear and satisfactory explication" of the weight given to Dr. Allegra's opinion in order to assist a reviewing court in "perform[ing] its statutory function of judicial review.'") (quoting *Cotter*, 642 F.2d at 704–05).

Moreover, the Court cannot conclude that the ALJ's error in evaluating Dr. Lee's opinions in Exhibit 4F are harmless. The ALJ assigned "some weight" to the opinions that Plaintiff had moderately severe limitations in her abilities to relate to other people and to perform work requiring frequent or even minimal contact with others but then crafted an RFC that allowed "frequent interaction with supervisors, co-workers and the public." R. 290, 292, 677.

14

Notably, the ALJ failed to explain the inconsistency between this RFC and Dr. Lee's opinions regarding Plaintiff's social limitations. R. 292.[6]

The Acting Commissioner points to other portions of the record that she believes support the ALJ's assessment of Dr. Lee's opinions contained in Exhibit 4F, *i.e.*, the Mental Assessment Form and the Supplemental Questionnaire. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18, pp. 9–10. The Court rejects the Acting Commissioner's suggestion that other evidence in the record supports the ALJ's consideration of Dr. Lee's opinions. *Id.* The ALJ did not rely on this evidence in weighing this opinion. R. 292. The Court must therefore reject the Commissioner's *post hoc* rationalization in this regard. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)); *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001) (stating that a district court should not substitute its own independent analysis for reasoning not mentioned by the ALJ) (citations omitted); *Rhodes v. Comm'r of Soc. Sec.*, No. CV 18-0678, 2019 WL 1042532, at *6 (D.N.J. Mar. 5, 2019) ("The Court is only permitted to consider the ALJ's decision based on the rationale contained in that decision; the Court is not to consider hypothetical rationales, which may justify the ALJ's decision, but which were not in fact underlying the opinion in question.") (citation omitted).

---

[6] The Court also notes that the vocational expert, upon whose testimony the ALJ relied, R. 294, was asked to assume a claimant able to, *inter alia*, have frequent interaction with supervisors and coworkers and occasional interaction with the public. R. 352–53. However, this hypothetical was inconsistent with the RFC ultimately found by ALJ, which provided for frequent contact with the public, supervisors, and co-workers. R. 290.

This Court concludes that remand of the matter for further consideration is appropriate even if, upon further examination of these issues, the ALJ again assigns only "some weight" to Dr. Lee's opinions contained in Exhibit 4F, *i.e.*, the Mental Assessment Form and the Supplemental Questionnaire, and ultimately concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision."). The Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of these issues.[7]

---

[7] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Lee's opinions contained in Exhibit 4F and the RFC, the Court does not consider those claims. However, the Court notes that, in weighing the opinions of the medical expert, Fatin Nahi, M.D., the ALJ agreed with Plaintiff that "some of medical expert's responses are unclear," but the ALJ nevertheless went on to assign "partial weight" to Dr. Nahi's opinions because "overall, the medical evidence of record does not support more than mostly moderate limitations, especially the notes from the Center for Family Guidance (Exhibit 15F)." R. 292. On remand, the ALJ should clarify which specific responses provided by Dr. Nahi are "unclear" and what weight, if any, is assigned to these responses.

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  October 5, 2021                             *s/Norah McCann King*
                                                                NORAH McCANN KING
                                                                UNITED STATES MAGISTRATE JUDGE